IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 15, 2004

## JEFFERY LEE MILLER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Montgomery County
No. 40000723     John H. Gasaway, III, Judge**

---

**No. M2003-02841-CCA-R3-PC -Filed April 19, 2005**

---

The petitioner, Jeffery Lee Miller, was convicted by a jury in the Montgomery County Circuit Court of premeditated first degree murder. The petitioner received a sentence of life imprisonment in the Tennessee Department of Correction without the possibility of parole. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel. After a hearing, the post-conviction court denied the petition. The petitioner now appeals. Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

William F. Kroeger, Springfield, Tennessee, for the appellant, Jeffery Lee Miller.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Helen O. Young, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.  Factual Background

The petitioner was charged with one count of premeditated first degree murder, and a trial was held on April 28, 1997. At the conclusion of the trial, the jury was unable to agree on a verdict, and a mistrial was declared. A second trial began on August 25, 1997, and the petitioner was convicted of the charged offense. This court affirmed the conviction on direct appeal, and, in doing so, outlined the facts underlying the conviction as follows:

The evidence at trial established that on September 1, 1996, the [petitioner] shot and killed the victim, Josh Kelley. The evidence indicated that earlier that evening, three young ladies, Tennille, Cassie, and Heather, were driving "up and down" Riverside Drive in Clarksville, Tennessee. They visited a motel where [Michael] Powers, Cassie's boyfriend, was throwing a party. While in the motel room, Tennille saw the [petitioner] preparing to leave the room, at which point someone handed a gun to him. The [petitioner] then left the party. Shortly thereafter, the three young ladies decided to go cruising on Riverside Drive again. They pulled in the parking lot of Page and Taylor's Sporting Goods Store to change drivers. As they were changing seats, a young man in the parking lot told them to "suck [his] dick or leave." The three young ladies left the area and returned to the party at the motel.

When they arrived at the motel, the ladies told Mr. Powers about the young man's comment. At this point, Mr. Powers and the [petitioner], who had returned to the motel, went to the [petitioner's] car, and the [petitioner] followed the ladies to the parking lot of Page and Taylor's Sporting Goods Store. According to the [petitioner's] second statement to the police, upon arrival at the parking lot, the [petitioner] told Mr. Powers to "get the gun from under the passenger seat." According to at least one witness, when Mr. Powers exited the vehicle, he had a gun in his waistband. The [petitioner] and Mr. Powers then approached a group of teenagers standing in the parking lot. The evidence at trial indicated that Mr. Powers asked which of them had told his girlfriend to "suck [his] dick." In response, the victim stepped forward and said, "We don't know you. We don't know your girlfriend. We didn't say anything to anybody." Mr. Powers then pulled the gun from his waistband and pointed it at the victim. According to one witness, the [petitioner] told Mr. Powers to "cap [the victim]." Mr. Powers lowered the gun to his side, at which point the [petitioner] took the gun out of Mr. Powers' hand. The [petitioner] cocked the gun, pulled the slide back, pointed the gun at the ground in front of the victim's feet, and fired. The [petitioner] then raised the gun, pointed it at the victim's chest, and fired. After the shooting, the [petitioner] and Mr. Powers left the scene.

State v. Jeffery Miller, No. 01C01-9801-CC-00029, 1999 WL 398188, at *1 (Tenn. Crim. App. at Nashville, June 18, 1999). Our supreme court denied permission to appeal.

Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective in failing to call his co-defendant, Michael Powers, as a witness in the

second trial, when Powers testified at the first trial which resulted in a hung jury. Additionally, the petitioner alleged that trial counsel was ineffective in failing to request the trial court to instruct the jury on all lesser-included offenses of premeditated first degree murder.

The petitioner testified at the post-conviction hearing that Powers was called as a State's witness at the first trial. Against the petitioner's wishes, trial counsel failed to call Powers as a witness at the petitioner's second trial. The petitioner acknowledged that he and trial counsel discussed calling Powers as a witness. Trial counsel informed the petitioner that he did not believe calling Powers as a witness would be in the petitioner's best interest.

The petitioner stated that he asked trial counsel to call Powers as a witness at the second trial because Powers' version of events was substantially the same as the account given by the petitioner. The petitioner maintained that the testimony of other witnesses at both his first and second trials left the impression that the petitioner got the gun from Powers, fired into the ground at the victim's feet, aimed for the victim's chest, then fired. The petitioner contended that he got the gun from Powers, fired into the ground at the victim's feet, and as he turned to run, and the gun accidentally fired. The petitioner conceded that at the first trial, Powers testified that the petitioner shot the ground then shot the victim, but failed to mention that the second shot was accidental. The petitioner also conceded that several witnesses at the second trial testified that the petitioner shot the ground then shot the victim. This testimony was substantially similar to Powers' testimony at the petitioner's first trial.

The petitioner further complained that at the second trial, trial counsel failed to request instructions on any lesser-included offenses.

Michael Powers testified at the post-conviction hearing that he was serving sentences for reckless homicide and aggravated assault based upon the same facts underlying the petitioner's conviction for first degree murder.[1] Powers was originally convicted of second degree murder; however, his conviction was reversed on appeal due to the trial court's failure to charge all lesser-included offenses.

Powers stated that he was available to testify at the petitioner's second trial, but he was not called as a witness. Powers asserted that the petitioner shot at the ground near the victim's feet, then, "[a]s he was turning to run he stumbled back and the gun went off." Powers acknowledged that he did not testify at his own trial. He conceded that at the petitioner's first trial he did not mention that the petitioner stumbled and accidentally discharged the fatal round. Further, Powers conceded that he never told police that the fatal shot was accidental. In fact, Powers admitted that the first time he ever mentioned that the second shot was accidental was at the petitioner's post-conviction hearing.

The petitioner's trial counsel testified that he represented the petitioner at both his first and second trials. Trial counsel recalled having several conversations with the petitioner regarding the witnesses they would call for the second trial. Counsel outlined the "pros and cons" of each witness.

---

[1] Powers was convicted under the theory of criminal responsibility.

Counsel could not specifically recall discussing the possibility of Powers testifying on the petitioner's behalf. However, he surmised that he likely told the petitioner that he would not recommend subpoenaing Powers. Counsel did not recall the petitioner asking for Powers to be a witness at his second trial. Trial counsel asserted that if the petitioner had requested that Powers testify at the second trial, counsel would have subpoenaed Powers. Trial counsel admitted that he did not interview Powers prior to the second trial.

Trial counsel noted that the State called Powers to testify at the petitioner's first trial. Trial counsel opined that the State was surprised by Powers testimony that he, not the petitioner, brought the gun to the scene of the crime. However, the remainder of Powers' testimony was substantially the same as that of other witnesses at both trials, making his testimony cumulative. When the State gave trial counsel its witness list for the second trial, trial counsel noticed that Powers' name was not on the list. Counsel maintained that

> it was my belief that they had modified their questioning and their testimony and other – might have had rebuttal witnesses which they didn't bring forward to negate his testimony. I thought he would be – they were laying – they might have been laying a trap, so to speak, hoping I would call Mr. Powers.

At the conclusion of the proof, the post-conviction court denied the petition for post-conviction relief. The court found that the petitioner failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel. The petitioner now appeals this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450,

458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

As we have noted, the petitioner contends that trial counsel should have called Powers to testify at his second trial. Powers testified at the post-conviction hearing that the fatal shot occurred when the petitioner stumbled as he turned to run from the victim. However, Powers admitted that prior to the post-conviction hearing, he had never told anyone that the fatal shot was fired accidentally, even though the information would have been important to the petitioner's defense and to Power's own defense. Additionally, trial counsel testified that Powers' testimony at the first trial was largely cumulative to that of the other witnesses. Further, even though the State chose not to utilize Powers in the second trial, counsel feared that having Powers testify as a witness for the defense could ultimately damage the petitioner's case. Therefore, he determined that having Powers testify was not in the petitioner's best interest. It is apparent that counsel's decision not to call Powers was a strategic choice. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). The petitioner has failed to prove trial counsel's ineffectiveness in this regard.

As his final complaint of ineffective assistance, the petitioner asserts that counsel should have requested that the trial court instruct the jury on all lesser-included offenses of premeditated first degree murder. At the petitioner's second trial, the trial court instructed the jury on first degree murder and second degree murder. The trial court did not instruct the jury on voluntary manslaughter, criminally negligent homicide, or reckless homicide.

Regarding lesser-included offense instructions, our supreme court has noted that "[t]he trial court's duty to charge juries as to the law of each offense included in an indictment applies whether or not a defendant requests such an instruction." State v. Wilson, 92 S.W.3d 391, 394 (Tenn. 2002);

see also Tenn. Code Ann. § 40-18-110(a) (1997); Yasmond Fenderson v. State, No. E2001-01088-CCA-R3-PC, 2002 WL 832205, at *5 (Tenn. Crim. App. at Knoxville, May 2, 2002), perm. to appeal denied, (Tenn. 2002). Based upon the trial court's duty to instruct the jury regardless of counsel's request, this court has previously declined to find that counsel was ineffective for failing to pursue lesser-included offense instructions at trial. See Terrance L. Turner v. State, No. M2002-02429-CCA-R3-PC, 2004 WL 587636, at *5 (Tenn. Crim. App. at Nashville, Mar. 25, 2004), perm. to appeal denied, (Tenn. 2004); Terry David Stephens v. State, No. M2001-01036-CCA-R3-PC, 2002 WL 31890860, at *7 (Tenn. Crim. App. at Nashville, Dec. 30, 2002), perm. to appeal denied, (Tenn. 2003). Accordingly, we conclude that the petitioner also failed to establish the ineffective assistance of counsel in this regard.[2]

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

---

[2] We note that the petitioner raised this issue as the ineffective assistance of trial counsel, not as the ineffectiveness of appellate counsel.